**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Alyssa G.F.,[1]<br><br>Plaintiff,<br><br>v.<br><br>Frank Bisignano,<br>*Commissioner of Social Security Administration*,<br><br>Defendant. | Case No. 25-cv-3723 (DJF)<br><br><br><br>**ORDER** |

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Alyssa G.F. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") September 3, 2024 decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Decision"). Plaintiff challenges the Administrative Law Judge's ("ALJ") assessment of her residual functional capacity. She asks the Court to vacate and reverse the Decision, or in the alternative, remand this matter to the Commissioner for a new hearing. (ECF No. 1.) The Commissioner asks that the Decision be affirmed in its entirety. (ECF No. 19.) This matter is before the Court on the parties' briefs.[2] For the reasons given below, the Court affirms the Decision in part and reverses it in part and remands this matter to the Commissioner for further review consistent with this Order.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

[2] The parties consented to have the undersigned United States Magistrate Judge conduct all proceedings in this case, including entry of the final judgment.

## BACKGROUND

### I. Plaintiff's Claim

Plaintiff applied for DIB and SSI on December 19, 2022, with an alleged disability onset date of August 21, 2021. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 221-29).[3] At that time she was a 34-year-old woman. (*Id.*) Plaintiff alleged she was disabled due to fibromyalgia, trigeminal neuralgia, Ehlers-Danlos Disorder, anxiety, depression, irritable bowel syndrome, cervical spinal stenosis, joint pain, intercostal spasms, and cognitive dysfunction. (R. 261.)

### II. Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).[4] In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

---

[3] The Social Security administrative (R.) is filed at ECF No. 5. For convenience and ease of reference, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

[4] The provisions of Title II (DIB) mirror the provisions of Title XVI (SSI) of the Social Security Act. For simplicity, the Court cites only to the statutory provisions and regulations under Title XVI.

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that she is not engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). The claimant must establish at step two that she has a severe, medically determinable impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if she has satisfied the first two steps and she has an impairment that meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). 20 C.F.R. § 416.920(a)(4)(iii).[5] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving she cannot perform any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).

If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

## III. Relevant Procedural History

An ALJ held a hearing on Plaintiff's application on July 17, 2024. (R. 15-36.) An attorney represented Plaintiff during the hearing, and Plaintiff and a vocational expert ("VE") testified.

[5] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R Part 404, Subpart P, App. 1.

(*Id.*) After the hearing, the ALJ considered whether Plaintiff was disabled from August 21, 2021, the alleged disability onset date, through September 3, 2024, the date of the Decision. (R. 86-98.)

Plaintiff's appeal relates to some of the ALJ's findings at step three, the ALJ's RFC assessment at step four, and the ALJs conclusions at step five. Relevant to this appeal, at step three, the ALJ considered Plaintiff's ability to adapt and manage herself under the "paragraph B" criteria of Listings 12.04, 12.06, and 12.15.[6] (R. 90.) She concluded that Plaintiff experienced a "moderate" limitation in this area. The ALJ noted that Plaintiff alleged she had difficulty managing stress but pointed out that Plaintiff was able to take care of her four children, take care of pets, prepare her own meals, organize her belongings, clean tables and countertops, and go out alone. (*Id.*) Plaintiff denied needing reminders to care for her personal needs or having any problems while out in the community. (*Id.*)

Next, the ALJ found that Plaintiff has the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [she] can frequently climb ramps and stairs; never climb ladders ropes and scaffolds; frequently kneel crouch and crawl; occasionally be exposed to extreme cold; occasionally be exposed to wetness; occasionally be exposed to vibration; never be exposed to unprotected heights and dangerous machinery. [She] is limited to performing simple tasks. [She] requires the option to alternate between sitting and standing after 30 minutes in either position and will take one minute to alternate between sitting and standing, but would not be off task more than 10% of the work day due to the sit stand option.

(R. 91.)

---

[6] Paragraph A of mental health Listings 12.04, 12.06 and 12.15 sets forth the medical criteria a claimant's medical evidence must reflect to satisfy each Listing, while paragraph B measures severity, by establishing the criteria assessed in evaluating how a claimant's mental disorder limits her functioning. *See* 20 C.F.R Part 404, Subpart P, App. 1, 12.00(a)(2)(B). The paragraph B criteria "represent the areas of mental functioning a person uses in a work setting. They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* To satisfy the paragraph B criteria, a claimant must establish that her mental disorder results in an "extreme" limitation in one of the four areas of mental functioning or a "marked" limitation in two of the four areas. *Id.*

In reaching this determination, the ALJ reviewed the record in detail, taking into consideration the medical opinions in the record; Plaintiff's medical testing, examination and treatment history; Plaintiff's testimony regarding her symptoms; her employment history; and her activities of daily living. (R. 91-96.)

Relying on VE Kenneth Jones's testimony, the ALJ then found at step five that, considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: information clerk (DOT# 237.367-018), with 65,000 jobs in the national economy; garment sorter (DOT# 222.687-014), with 22,000 jobs in the national economy; and marker (DOT# 209.587-034), with 64,000 jobs in the national economy. (R. 96-97.) Based on these findings, the ALJ concluded Plaintiff was not disabled, and issued the Decision denying benefits on September 3, 2024. (*Id*. at 98.)

**DISCUSSION**

**I. Standard of Review**

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* But a court determining whether evidence is substantial must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)). "If, after reviewing the record, the court finds it is

possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At a minimum, the ALJ must build a logical bridge between the evidence and the RFC she creates. She does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II. Analysis

Plaintiff advances two main arguments on appeal. First, she argues the ALJ reversibly erred by not accounting for absenteeism caused by her symptoms and frequency of treatment. Second, she argues the ALJ cherry-picked the evidence to support the Decision and failed to create an accurate and logical bridge between the evidence and the Decision. The second argument is comprised of several contentions. Plaintiff contends that: (1.) it was reversible error for the ALJ to find "persuasive" the psychological consultants' opinions that Plaintiff was

moderately impaired in adapting or managing herself without including any limitation in Plaintiff's RFC addressing that finding; (2.) the ALJ inappropriately rejected Plaintiff's subjective complaints of pain; and (3.) the sit/stand restriction included in Plaintiff's RFC has no evidentiary support and conflicts with Plaintiff's testimony that she needs to lie down to feel symptom relief, not switch between sitting and standing. Because the Court finds reversible error based on the ALJ's failure to address limitations assessed by the psychological consultants, the Court begins there.

**A. The Psychological Consultants' Opinions**

State agency consultants Drs. Bolden and Kachgal opined on Plaintiff's mental functioning in the four "paragraph B" criteria used to evaluate whether a claimant meets or medically equals a listed impairment. They concluded that Plaintiff has moderate limitations in her ability to adapt or manage herself and thus could "appropriately respond to only simple routine changes in a work setting." (R. 40, 45, 56, 69, 79). The Court refers to this as an "adaptation limitation." The ALJ agreed that Plaintiff experienced a moderate limitation in this area at step three of the sequential analysis (R. 90). When the ALJ further evaluated Drs. Bolden's and Kachgal's opinions at step four, she found them persuasive because Drs. Bolden and Kachgal supported each of their assessments of the paragraph B criteria with a detailed explanation of the evidence, and their opinions were consistent with the psychological consultative examiner's detailed notes. (R. 95.) However, in contrast with these opinions, the ALJ added a limitation to Plaintiff's RFC to performing simple tasks due to Plaintiff's "reports of difficulty concentrating." (*Compare* R. 45, 56, 69, 79, psychological consultants' findings that Plaintiff "retains the ability to … apply detailed to complex instructions with sustained concentration", with R. 95, ALJ Decision limiting Plaintiff to "simple tasks" in light of Plaintiff's hearing testimony and subjective reports.)

Dr. Van Noord, the consultative psychological evaluator, provided a mental medical source statement after examining Plaintiff. She opined in relevant part that Plaintiff "would likely have difficulty coping with mild to moderate stressors in the workplace." (R. 631.) The ALJ acknowledged Plaintiff's difficulty managing stress at step three. She wrote that, despite that difficulty, evidence showed Plaintiff could care for four children, take care of pets, prepare her own meals, organize her own belongings, clean off tables and countertops, and go out alone. (R. 90.) The ALJ also noted that Plaintiff denied having problems while in the community and reported working part time as a massage therapist. (*Id.*) In assessing Plaintiff's RFC at step four, the ALJ found Dr. Van Noord's opinions persuasive, including her opinion that Plaintiff would have difficulty coping with mild to moderate stress in the workplace. (R. 94-95.) However, as with the state psychological consultant opinions, the ALJ added a limitation to simple tasks to account for Plaintiff's subjective reports of difficulty concentrating. (*Compare* R. 631, Dr. Van Noord opinion that Plaintiff showed "adequate attention and concentration for complex/multilevel tasks, *with* R. 95, ALJ Decision.)

Though the Decision found the consulting psychologists' opinions persuasive except insofar as the ALJ added a limitation to performing simple tasks, the RFC includes no adaptation limitation or any limitation accounting for Plaintiff's impaired ability to cope with stress. Plaintiff argues the ALJ erred in finding the state agency psychological consultants' opinions persuasive but neglecting to include their recommended limitation or to explain why she did not do so. And because the ALJ did not include this limitation in a hypothetical question to the VE at step five, she argues the VE's testimony does not provide substantial evidence to support the ALJ's Decision. (ECF No. 12 at 22-23.) The Commissioner makes two arguments in response. First, the Commissioner points out that the ALJ added a simple tasks limitation because of Plaintiff's

reported concentration difficulties. (ECF No. 19 at 7, 8-9.) But that is the extent of the Commissioner's argument; it is cursory and it does not explain how a limitation to simple tasks would account for Plaintiff's impaired ability to adapt and manage stress. It is also legally untenable. *See Jennifer K. v. Kijakazi*, No. 22-cv-700 (NEB/DTS), 2023 WL 3998033, at *4 (D. Minn. May 26, 2023), *report and recommendation adopted*, 2023 WL 3996239 (D. Minn. June 14, 2023) ("The weight of authority across the majority of jurisdictions considers 'simple, routine, repetitive' task limitations as related to the 'concentrate, persist, and maintain pace' area of function."). Second, the Commissioner argues that all three jobs identified at step five have a specific vocational preparation ("SVP") level 2, which corresponds to unskilled work. (ECF No. 19 at 7.) According to the Commissioner, the mental demands of unskilled work include the ability to deal with changes in a routine work setting. (*Id.*) Thus, the Commissioner says the ALJ reasonably considered the state agency opinions in determining RFC. (*Id.* at 8.) This argument is also unpersuasive. "[I]ndividuals respond differently to the demands of work, and 'the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job' when the individual has a mental impairment." *September L. v. Bisignano*, No. 25-cv-00331 (LMP/ECW), 2026 WL 500755, at *17 (D. Minn. Jan. 29, 2026), *report and recommendation adopted*, 2026 WL 498787 (D. Minn. Feb. 23, 2026) (citing SSR 85-15, 1985 WL 56857, *6).

The court in *Austin C. v. Kijakazi*, No. 22-cv-4036-KEM, 2023 WL 7130621 (N.D. Iowa Oct. 30, 2023), addressed a similar dispute. There, the state agency consultants opined that the plaintiff had a moderate limitation in adapting to change and that he could adjust to changes in the workplace with supervision. *Id.* at *5. The ALJ found the opinions persuasive and limited the plaintiff to simple, routine, repetitive tasks in unskilled work—just as the ALJ did here. *Id.* And

as in this case, the ALJ included no adaptation limitation in the plaintiff's RFC, despite unskilled work requiring the ability to deal with changes in a routine work setting. *Id.* The ALJ did not discuss the plaintiff's ability to adapt to change nor explain why the ALJ omitted such a limitation from the RFC. *Id.* Given the unexplained gap between the demands of unskilled work and the persuasive medical opinions, the court concluded there was insufficient evidence to support the ALJ's RFC and remanded the case.

*Austin C.* is not unique. *See, e.g.*, *Mark S. E. v. Kijakazi*, No. 20-cv-1954 (JFD), 2022 WL 834513 (D. Minn. Mar. 21, 2022) (remanding decision because ALJ found one-to-two step task limitation persuasive but failed to include limitation in RFC or explain its omission); *Brent Z. v. Kijakazi*, No. 22-cv-511 (JWB/JFD), 2023 WL 1110449, at *8 (D. Minn. Jan. 30, 2023), *report and recommendation adopted*, 2023 WL 2414594 (D. Minn. Mar. 8, 2023) (same); *Jennifer K.*, 2023 WL 3998033, at *7 ("While the ALJ discussed and found the agency psychologists' opinions persuasive in this case, the ALJ did not provide good—or any—reasons for the omission. Under these circumstances, this constitutes reversible error.").

Here, the ALJ failed to explain why she omitted the consultants' recommended limitation to "simple routine changes in a work setting." The ALJ noted at step three that, despite Plaintiff's reported difficulty managing stress, she could take care of her children and go out alone. (R. 90.) But this statement does not explain why, having found the consultants' opinions persuasive, the ALJ nevertheless omitted any adaptation limitation from Plaintiff RFC. It is thus unclear whether the omission was inadvertent, whether the ALJ found Plaintiff's impaired ability to adapt to change and manage stress was too insignificant to affect her RFC, or whether the ALJ believed the RFC's "simple tasks" limitation adequately accounts for Plaintiff's impairment. And by extension, the Court cannot conclude that the vocational expert's testimony provides substantial evidence to

support the ALJ's step five conclusion. "A hypothetical question is sufficient if it sets forth the impairments which are accepted as true by the ALJ." *Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quotation omitted). The hypothetical question posed to the VE did not include these limitations.

The ALJ should have either included adaptation and stress-related limitations in Plaintiff's RFC or explained her decision not to do so. Because the necessary logical bridge is missing, the ALJ's failure to do either of these things is an error requiring remand. *Mark S.E.*, 2022 WL 834513, at *5 ("On remand, the ALJ must either include the one-to-two step task limitation in the RFC or explain why she did not do so."). On remand, the ALJ must consider whether limitations consistent with the consultants' opinions should be included, and if not, explain their omission. If the RFC changes, the ALJ must present a new hypothetical question to the VE, and based on the resulting testimony, reconsider the finding at step five that Plaintiff is not disabled.

**B. Plaintiff's Subjective Complaints**

None of Plaintiff's remaining points of error warrant remand. One such argument is Plaintiff's contention that the ALJ improperly focused on objective medical evidence and misrepresented or cherry-picked daily activities to reject her subjective complaints of pain. (ECF No. 12 at 26.) The Court finds no reversible error in the ALJ's evaluation of Plaintiff's subjective complaints.

"When evaluating the claimant's subjective complaints, the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the *Polaski* factors: (i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Julin v. Colvin*, 826

F.3d 1082, 1086 (8th Cir. 2016) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c). "The ALJ is not required to discuss each *Polaski* factor as long as '[s]he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling ("SSR") 16-3p, 2007 WL 5108034, at *10 (Oct. 25, 2017). The Court must defer to the ALJ's assessment of a claimant's subjective complaints if the ALJ conducts the required analysis, supported by good reasons and substantial evidence. *See, e.g.*, *Renstrom v. Astrue*, 680 F.3d 1057, 1063-64 (8th Cir. 2012).

Here, the ALJ conducted the required analysis and supported her conclusion with good reasons and substantial evidence. After summarizing Plaintiff's hearing testimony and stating her conclusion that Plaintiff's complaints are not entirely consistent with the medical and other evidence in the record (R. 92), the ALJ spent the next four pages of the Decision addressing the *Polaski* factors. The ALJ discussed Plaintiff's daily activities and work history (R. 93-95, noting that Plaintiff moved heavy furniture, took care of four children, worked part-time as a massage therapist, and reported getting a lot of organizing done at home after changing mental health medication regimen); her diagnoses (R. 92); the severity of her conditions (R. 92-93, describing objective medical evidence of musculoskeletal impairments but also that muscle tone and strength were normal throughout, sensory examination was normal to touch and vibration in her extremities, and citing Plaintiff's statements that her pain was controlled with medication and

infusions or injections); the effectiveness of treatment (R. 92-94, discussing medication trial and error and Plaintiff's description of infusions and pain medications improving her pain to reported 2/10 in July 2023, for example); and functional restrictions (R. 92-96, considering and adopting functional restrictions). The ALJ did not improperly focus on objective medical evidence as the reason for discounting Plaintiff's complaints.[7] Reports of pain controlled by medication and treatment, and the ability to reorganize the kitchen and care for a toddler all day, are additional pieces of evidence inconsistent with disabling pain that *Polaski* required the ALJ to consider.

Having reviewed the Decision and the evidence cited by both Plaintiff and the Commissioner, the Court concludes that the ALJ conducted an appropriate *Polaski* analysis. The ALJ considered both the evidence supporting Plaintiff's reports of pain and the evidence undermining those reports, weighed the evidence, and arrived at a conclusion that is supported by substantial evidence. The Court will not reweigh that evidence. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022) ("Despite [Plaintiff's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence").

Plaintiff relies on *Reed v. Barnhart*, 399 F.3d 917 (8th Cir. 2005), and *Chelsea A. v. Kijakazi*, 2023 WL 3751949 (W.D.N.Y. June 1, 2023), to support her contention that the ALJ did not articulate how Plaintiff's activities—specifically her parenting abilities—evidence her ability to consistently perform the RFC. (ECF No. 12 at 27-28.) In *Reed*, the ALJ found the plaintiff's ability to engage in certain daily activities was inconsistent with disability: Reed could prepare meals, watch movies, check the mail, and do laundry, among other things. *Reed*, 399 F.3d at 922. The Eighth Circuit rejected the ALJ's denial in part on the ground that the ALJ placed undue

[7] The ALJ plainly took Plaintiff's subjective statements into account when she adopted an RFC restriction to performing simple tasks based on Plaintiff's testimony and reports to her doctors. (R. 95, citing R. 898, hearing testimony.)

weight on the ability to carry out these kinds of day-to-day activities without assessing how those activities translate into working full-time. *Id.* at 923. The appellate court held there was no apparent inconsistency between Reed's ability to check the mail or do laundry and Reed's alleged incapacity to sustain full-time work. However, the same cannot be said of Plaintiff's reported activities, such as taking care of a toddler on her own all day. And critically, the Eighth Circuit later acknowledged its older cases, such as *Reed,* sent "mixed signals about the significance of a claimant's daily activities in evaluating claims of disabling pain." *Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009). The court clarified that it is reasonable for an ALJ to rely on reported activities such as "doing laundry, washing dishes, changing sheets, ironing, preparing meals, driving, attending church, and visiting friends and relatives" to infer the claimant's assertion of disabling pain is not entirely credible. *Id.*; *see also Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) (stating that "even someone with severe physical and mental impairments may nonetheless be able to work," and finding claimant's self-reported daily activities of caring for her children, preparing food, doing housework, shopping, and driving a car "showed that she could work" and supported ALJ's decision to disregard medical opinions). *Reed* therefore does not stand for the proposition that an ALJ errs when she weighs a claimant's reported daily activities against her subjective complaints of pain.

*Chelsea A.* is an out-of-Circuit, unpublished case that is inapposite. There are several key differences between this case and *Chelsea A.* That case concerned the ALJ's finding that medical opinions were unpersuasive. Assessing medical opinions requires an analysis different from the *Polaski* factors that are used to analyze the claimant's subjective complaints of pain. *See* 20 C.F.R. 404.1520c (establishing analytical framework for assessing medical opinion evidence). Moreover, the medical opinions at issue in *Chelsea A.* were about the plaintiff's mental capacity, not physical

pain as in this case and in *Polaski*. And it is unclear whether the ALJ in *Chelsea A.* found the plaintiff's complaints consistent or inconsistent with other medical evidence. Furthermore, this Court must apply the law applicable in the Eighth Circuit, and as previously discussed, the Eighth Circuit does not prohibit an ALJ from considering a claimant's ability to care for children at home as part of her subjective-complaints analysis.

### C. Absenteeism

Plaintiff argues that both her course of treatment and her symptoms would cause her to be absent from work more than an employer would allow. She says the ALJ did not discuss the frequency of her treatment and did not explain how Plaintiff's statements about her symptoms are inconsistent with the record. (ECF No. 12 at 18-21.) Much of her argument requires a finding that her subjective complaints are consistent with the other evidence in the record, which the Court rejects for the above-stated reasons.

#### 1. Course of Treatment

Plaintiff insists that her need to be absent for treatment alone warrants remand. To show this, she counts the number of days she previously underwent ketamine infusions and nerve blocks, and the number of emergency room and urgent care visits in 2022 into 2024. (ECF No. 12 at 18-19.) According to Plaintiff, each ketamine infusion lasts 2.5-3 hours, so each one would result in a missed workday. By Plaintiff's count, she would have missed nine days in 2022, 25 days in 2023, and five days through May 2024. (ECF No. 12 at 19.) She contends the ALJ's cursory reference to this treatment history is insufficient to explain how the ALJ assessed the frequency and duration of treatment, and therefore, the RFC is not supported by substantial evidence. (*Id.* at 20.)

Simply counting the number of days Plaintiff underwent infusions or injections *that she scheduled* is insufficient to establish absenteeism that would preclude gainful employment. "The frequency of medical appointments ... without information to substantiate the degree of absenteeism from employment resulting from such appointments, does not justify an absenteeism limitation." *James P.K. v. O'Malley*, No. 23-cv-3883 (KMM/DTS), 2024 WL 5508588 at *6 (D. Minn. Aug. 7, 2024). Furthermore, "[i]t is Plaintiff's burden to show the frequency of [her] healthcare appointments *and any disruption they would cause*." *Jason P.P. v. Kijakazi*, No. 20-cv-688, 2021 WL 4483040, at *17 (D. Minn. Sept. 30, 2021) (emphasis added). A plaintiff cannot satisfy this burden by simply pointing to the frequency of her medical appointments; rather, she must demonstrate that her medical appointments can only be scheduled during working hours and would therefore necessarily result in absenteeism. *See James P.K.*, 2024 WL 5508588 at *6.

Plaintiff did not meet her burden of establishing absenteeism due to medical appointments.[8] The ALJ amply considered the medical records documenting Plaintiff's few hospital and urgent care visits and detailing her ketamine infusions and other pain treatment appointments. That evidence on its own does not show that Plaintiff would require more than the allowed number of absences for treatment each month and year to sustain gainful employment. The ALJ did not err by omitting an absentee limitation in the RFC to account for Plaintiff's appointments.

---

[8] In her reply brief, Plaintiff maintains that it would be difficult to undergo a 1.5-3-hour infusion before or after the workday while the infusion center is open for business hours. (ECF No. 20 at 4.) Her argument leaves open the question of when the infusion center has its business hours and whether it is possible to schedule infusions on days off.

**2. Symptoms**

Plaintiff next contends the ALJ failed to consider her symptoms and how they affect her ability to maintain attendance. (ECF No. 12 at 20-21.) Specifically, she cites her testimony about feeling groggy and disoriented immediately after and the day after her ketamine infusions. She thus asserts each ketamine infusion would result in two missed workdays, not just one. (*Id.* at 21.) She also points to her testimony about pain flares after injections that cause her to lie on the couch or in bed all day.

These arguments are not well taken. First, as discussed above, the ALJ's conclusion that Plaintiff's subjective complaints of pain are not entirely consistent with the medical and other evidence in the record is supported by substantial evidence. This means the ALJ did not need to accept Plaintiff's statements that she would need the day off work after ketamine infusions, or that anticipated pain flares would require additional time off work. Second, having set aside Plaintiff's subjective complaints, there is no *medical evidence* to support the notion that Plaintiff could not work immediately after or the day after infusions or during a pain flare, or that pain flares will occur with such frequency that absenteeism would be disabling. On the contrary, Plaintiff's immediate post-infusion condition was within normal limits, she repeatedly told medical providers she experienced no side effects from ketamine infusions, and she tolerated the infusions. (*See* R. 533, 541, 573, 581, 589, 610, 618, 854, 862, 866, 870, 874, 880, 886, 892.) In July 2023, Plaintiff's treating provider noted she had some nausea and lightheadedness during an infusion but further stated these symptoms resolved with fluids and Zofran medication. (R. 877.) Plaintiff points to no medical record that mentions disabling pain flares or day-after symptoms. The lack of medical evidence distinguishes this case from *Baker v. Apfel*, 159 F.3d 1140 (8th Cir. 1998), which Plaintiff cites to show that her hospital and urgent care visits must be considered.

(*See* ECF No. 20 at 4.) In *Baker*, it was "uncontroverted" that the plaintiff would be absent from work often because of migraines, and medical opinions in the record established both that the plaintiff received a large number of injections to treat migraines and that he needed to be driven home afterwards because of enduring effects from the treatment. *Baker*, 159 F.3d at 1146. Plaintiff identifies no similar medical evidence here.

Based on the foregoing finding that the ALJ did not err in evaluating Plaintiff's subjective complaints, and the lack of medical evidence establishing a significant need for absenteeism, the Court concludes that the ALJ did not err in omitting an absenteeism limitation from Plaintiff's RFC or the hypothetical to the VE. The Court therefore declines to remand on that ground.

**D. Sit/Stand Option**

The ALJ crafted an RFC that gives Plaintiff the option to alternate between sitting and standing after 30 minutes, with one minute to alternate between sitting and standing. The ALJ included this limitation based on Plaintiff's testimony and records suggesting Plaintiff experienced relief from changing positions. (R. 95.) Plaintiff argues this limitation is problematic because she testified she experiences relief when she lies down, not from alternating between sitting and standing. (ECF No. 12 at 30.) Plaintiff further notes there is no medical evidence in the record supporting the sit/stand option included in the RFC. (*Id.*)

The Court is not persuaded that the ALJ erred. First, Plaintiff's alleged need to lie down is based only on her self-reports. (*See id.* at 30.) Since the ALJ adequately supported her conclusion discounting Plaintiff's subjective statements, the ALJ did not err in omitting a lie-down limitation from the RFC. Second, the ALJ's inclusion of a sit/stand limitation without support from any particular medical opinion was not legally erroneous. There is no requirement that the ALJ base the limitations in the RFC on a particular medical opinion. *Hensley v. Colvin*,

829 F.3d 926, 932 (8th Cir. 2016) ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion."). Moreover, the ALJ's inclusion of this *additional* limitation did not materially impact her determination that Plaintiff is not disabled, and therefore, it cannot establish a basis for remand.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Request for Relief (ECF No. 12) is **GRANTED IN PART** and **DENIED IN PART**;
2. The Commissioner's Request for Relief (ECF No. 19) is **GRANTED IN PART** and **DENIED IN PART**; and
3. This matter is remanded to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 18, 2026

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge